UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-25203-CIV-GOODMAN
[CONSOLIDATED CONSENT CASES]

MORRIS WILSON, et al.,

    Plaintiffs,

v.

NCL BAHAMAS LTD.,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Defendant NCL Bahamas Ltd., a cruise ship operator doing business as Norwegian Cruise Line, moves to dismiss a consolidated amended complaint filed by a group of more than 175 plaintiffs who were on the Norwegian *Breakaway* in December 2017 when it encountered what Plaintiffs describe as "a massive weather event (Bomb Cyclone)," but what Norwegian classifies as "a winter weather system." [ECF Nos. 18, p. 9; 19, p. 1]. Plaintiffs alleged physical and emotional injuries as a result of being "subjected to hours of terror as the gigantic cruise ship was battered by hurricane force winds and more than 30 foot waves." [ECF No. 18, p. 9]. Norwegian views the damages sought as "allege[d] psychological injuries in the form of emotional distress. . . ." [ECF No. 19, p. 1].

For the reasons outlined below, the Undersigned **grants** Norwegian's motion to

dismiss, albeit without prejudice, and gives Plaintiffs 14 days to file a second amended complaint designed to clean up the inconsistent allegations and to more-clearly frame the issues.

I.      **Factual Allegations**

The amended complaint alleges that Norwegian knowingly and intentionally decided to sail the *Breakaway*, carrying more than 4,000 passengers, directly into the path of a massive bomb cyclone. It contends that weather forecasters from both the United States government and the private sector were, on January 2, 2018, predicting a storm of historic proportions involving hurricane-force winds.

The amended complaint alleges that Norwegian did not inform its passengers of the severity of the storm. It says that it was not until the day after the ship left Great Stirrup Cay in the Bahamas, when "large waves were rocking the cruise ship, causing passengers and crewmembers to become seasick," that Norwegian finally gave a warning. [ECF No. 18, p. 12]. But, even then, the passengers were told only that the ship was in rough seas, and they had no idea they were being subjected to a historic winter weather event with hurricane-force winds.

By late evening on January 3, 2018, the amended complaint alleges, "the hurricane-force winds and rough seas were battering the vessel so severely that passengers were unable to stand in their staterooms and were being thrown out of their beds; causing various injuries to passengers, including Plaintiffs." [ECF No. 18, p. 12].

2

The amended complaint paints a frightening picture of what passengers experienced:

> While confined to their staterooms and small public spaces in the interior, passengers were holding onto whatever they could find in order to keep from falling due to the weather event. Furniture was overturned and tossed throughout the vessel; broken glass littered all levels of the vessel; elevators became inoperable; unsanitary water overflowed out of shower drains and into passengers' cabin; waves crashed through open and/or shattered balcony doors; water rushed in through numerous other areas of the vessel; and pipes consisting of raw water burst on the vessel, causing flooding throughout multiple decks of the vessel.
>
> At times the vessel listed (tilted) as far as 45 degrees and passengers were injured. Waves up to 30 feet were crashing along the side of the Norwegian Breakaway as the ship listed to either side.
>
> Passengers scrambled to search for life jackets or floatation devices, but were unable to do so. There were numerous families with small children aboard the vessel and parents did their best to protect themselves and their young children who were crying uncontrollably and screaming in sheer terror.
>
> Hundreds of passengers, including Plaintiffs, were subjected to hours of terror, flooding of raw water, unsanitary conditions, lack of ventilation of fumes, and trauma as a result of the cruise traveling through hurricane force winds – all of which could have been easily avoided if NCL stayed in Great Stirrup Cay until the severe winter storm passed or rerouted the ship so that the passengers were not exposed to the dangerous weather conditions. As a result of NCL's negligence, passengers sustained physical and emotional injuries.

[ECF No. 18, pp. 12–14].

The amended complaint also includes photographs, weather forecasts, and maps into the pleading itself (i.e., pasted into the document, as opposed to being attached as

exhibits).

Asserting claims for negligence (Count I) and negligent infliction of emotional distress (Count II), the amended complaint seeks both compensatory and punitive damages.

II. **Applicable Legal Standards**

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

**III.    Analysis**

    **A.    *Shotgun Pleading Argument***

Norwegian argues that the amended complaint is an impermissible shotgun pleading because it is based on nearly 30 separate and discrete alleged failures on Norwegian's part even though "[m]any of them are not duties owed at all as a matter of law." [ECF No. 19, p. 2]. According to Norwegian, "it appears Plaintiffs tried to come up with any alleged duty that they could think of that Norwegian might owe them." [ECF No. 19, p. 4]. It contends that "Plaintiffs' negligence claims are predicated on allegations of non-existent duties, meaningless duties, unexplained duties, and conflicting ones." [ECF No. 19, p. 4].

Norwegian concedes that some courts do not dismiss maritime negligence claims in "line-item" fashion,[1] but it argues that the "better course is to dismiss since Plaintiffs'

---

[1]    *See McLaren v. Celebrity Cruises, Inc.*, No. 11-23924-CIV, 2012 WL 1792632, at *5 (S.D.

5

negligence claims have so many problems." [ECF No. 19, p. 4]. The Undersigned agrees that, in a vacuum, it is not necessary to strike specific purported duties from a negligence claim if the facts alleged generate a viable claim for breach of a duty of care. However, the amended complaint suffers from a more-basic flaw: it inconsistently alleges the applicable standard of care.

In paragraph 148, Plaintiffs allege that Norwegian owed them a duty of "**reasonable** care under the circumstances." [ECF No. 18, p. 14 (emphasis added)].

So far, so good.

But later, in the very same paragraph, Plaintiffs allege that "a **heightened** degree of care is required where the risk-creating condition is peculiar to the maritime context." [ECF No. 18, p. 15 (emphasis added)]. The amended complaint then alleges, in that same paragraph, that "[u]nder this **heightened/enhanced** duty of care to passengers on vessels navigating through hurricane force winds and on rough sea conditions, Defendant NCL breached its duty to keep passengers, including Plaintiffs, safe from the perilous conditions." [ECF No. 18, p. 15 (emphasis added)].

But after making these heightened-duty allegations, Plaintiffs then allege, in the very next paragraph (paragraph 149), that "[i]t was the duty of Defendant NCL to provide Plaintiffs with **reasonable care** under the circumstances." [ECF No. 18, p. 15 (emphasis

---

Fla. May 16, 2012) ("[T]he Court will not strike alleged duties from the Complaint[] in line-item fashion.") (quoting *Holguin v. Celebrity Cruises, Inc.*, No. 10-20215, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)).

added)].

These allegations about the duty of care are indisputably inconsistent.

Concerning the "shotgun pleading" rule -- a common defense challenge and one that Norwegian is pursuing here -- the Eleventh Circuit provided a comprehensive guide to the applicable rules in *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015). Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 10(b) further provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Recognizing that courts sometimes used the term "shotgun pleading" to simply mean "poorly drafted complaint," the *Weiland* Court identified four types of shotgun pleadings. *Weiland*, 792 F.3d at 1321.

The "unifying characteristic" of all categories of impermissible shotgun pleadings is "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The inconsistency outlined above concerning different duties does not fit neatly into the four typical types of impermissible shotgun pleadings identified by our appellate court:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—

7

> by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321–23.

Nevertheless, the amended complaint undoubtedly asserts differing duties, which generates confusion. Moreover, it alleges a purported standard of care, or duty, not recognized in our circuit: Plaintiffs' claim that a heightened standard of care somehow supersedes the reasonable standard of care in maritime negligence cases when the weather and seas are rough. Not only has the Eleventh Circuit not adopted the heightened standard of care theory, but it has actually and affirmatively rejected it. *Kressly v. Oceania Cruises, Inc.*, 718 F. App'x 870, 872 (11th Cir. 2017) (citing *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015)) (emphasis added) (affirming summary judgment for defendant cruise line operator and rejecting reliance on *Catalina Cruises v. Luna*, 137 F.3d 1442 (9th Cir. 1998) -- because the court there "merely clarified that 'where the risk is great because of high seas, an increased amount of care and precaution is *reasonable*'").

In a perhaps ironic twist, the law firm representing Plaintiffs in this case also represented the plaintiffs in both *Sorrels* and *Kressly.* And, in a further illustration of coincidence, Norwegian was also the defendant in *Sorrels*.

In their response to the dismissal motion, Plaintiffs do not discuss *Kressly* or *Sorrels.* Instead, they say they "properly alleged the *correct* standard of care, i.e., that Defendant NCL owed Plaintiffs a duty of *reasonable care* under the circumstances." [ECF No. 23, p. 10 (emphasis added)]. But they then argue that they are entitled to "plead in the alternative" by alleging that Norwegian "owed a **heightened duty of care** due to it's [sic] intentional and knowing decision to sail the Norwegian *Breakaway* through a Bomb Cyclone with hurricane force winds and over 30 [foot] waves, which is clearly a dangerous condition that is peculiar to the maritime context." [ECF No. 23, p. 10 (emphasis added)].

To be sure, there are times when a plaintiff is permitted to plead in the alternative. But asserting a non-existent claim is not one of those instances. Given that the applicable standard of care here is a ship owner's duty to provide reasonable care to passengers in navigable waters, a theory (alternative or not) urging the rejected heightened care argument is incorrect. Norwegian owes a duty to provide reasonable care "under the circumstances." *Kressly*, 718 F. App'x at 872. To the extent that the circumstances involve a so-called bomb cyclone at sea, then the issue is whether Norwegian met the reasonable care standard for a bomb cyclone.

Regardless of whether the inconsistent and incorrect heightened-duty theory is

officially an impermissible "shotgun pleading" or a garden-variety pleading flaw that does not meet the four categories of improper shotgun pleadings, the key point is that it is legally incorrect, inconsistent, and inherently confusing. Therefore, the amended complaint must be dismissed, with leave to refile, so that there is clarity about the applicable standard of care.

Plaintiffs may, of course, allege in their second amended complaint that the severe weather conditions *affected* what Norwegian was required to do to not breach its duty to provide reasonable care. But what they cannot do in the next version of the complaint is to again allege a legal theory that is not viable in this circuit.

**B.** *Punitive Damages*

Norwegian's dismissal motion argues that Plaintiffs "cannot show" the intentional misconduct that must be proved to be entitled to punitive damages. [ECF No. 19, p. 6]. It argues that cruise passengers can recover punitive damages only "in cases of exceptional circumstances or intentional misconduct, which are not found here" in this lawsuit for negligence and negligent infliction of emotional distress. [ECF No. 19, p. 7].

This argument does not persuade the Undersigned for two reasons.

First, "a plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (internal quotations

and citation omitted); *see also Jackson-Davis v. Carnival Corp.*, No. 17-24089-CIV, 2018 WL 1468665, at *5 (S.D. Fla. Mar. 23, 2018) (same); *Fleischer v. Carnival Corp.*, No. 15-24531-CIV, 2016 WL 1156750, at *1 (S.D. Fla. Mar. 17, 2016) (same); *Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23323-CIV, 2012 WL 920675, at *4 (S.D. Fla. Mar. 19, 2012) (same). Thus, "[t]he plaintiff is no longer required to prove intentional misconduct." *Doe*, 2012 WL 920675, at *4.

Second, the alleged facts are sufficient at this stage to plausibly lead to entitlement for punitive damages, notwithstanding that Plaintiffs did not use the terms "willful," "wanton," or "outrageous" in the amended complaint. For example, Plaintiffs allege in paragraph 147 that Norwegian "knowingly, intentionally and recklessly decided to sail directly into the path of a hurricane force storm, thereby placing the lives at risk of each and every one of the passengers and crew aboard that ship." [ECF No. 18, p. 14]. And in paragraph 155, Plaintiffs allege "negligence, gross negligence and/or intentional conduct." [ECF No. 18, p. 19]. Under the circumstances, the Undersigned does not believe dismissal is warranted.

**However**, as long as Plaintiffs are going to be refiling their complaint to address the proper standard of care, they might as well enhance, if factually possible, the allegations relevant to a claim for punitive damages.

C. *Photographs*

Because Plaintiffs are going to be refiling their complaint, they should omit

11

photographs, maps, diagrams, or other graphic material from the body of the complaint. If they wish to reference them, then they may attach them to the complaint as exhibits, rather than include them in the complaint as factual allegations for which Norwegian would need to respond. *See Stacey v. Peoria Cty., Ill.*, No. 13-CV-1051, 2013 WL 3279997, at *8 (C.D. Ill. June 27, 2013) (denying defense motion to strike photographs attached to the complaint and noting that the photographs are exhibits, not evidence).

The preferred practice would be to not insert the materials in the complaint and also to refrain from attaching them as exhibits. But if Plaintiffs decide to submit these materials again as exhibits, then they should understand that the materials might not be of help in determining whether the next version of the complaint passes muster -- because those types of exhibits might not be deemed the type of documentary evidence or "written instruments" that Rule 10(c)[2] deems as being incorporated into, and made a part of, the complaint. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991) (explaining that Plaintiffs incorrectly viewed Rule 10 as "a license to plead their case by exhibit" by attaching "an assortment of letters, newspaper articles, commentaries, cartoons and miscellaneous other exhibits").

**IV.     Conclusion**

The Undersigned **grants** Norwegian's motion to dismiss without prejudice and

---

[2]     Rule 10(c) provides, in pertinent part, that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

give Plaintiffs fourteen 14 days in which to file a second amended complaint.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on May 14, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record