UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-25203

In re NCL (BAHAMAS) LTD.,

    Defendant.

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL[1]

The Plaintiffs hereby sue Defendant and allege as follows:

## JURISDICTION AND PARTIES

1. Plaintiffs, Anthony Vitale and Lynn Vitale, are residents of New York.

2. Plaintiffs, Vikiana Carranza, Israel Carranza, individually and as Parent and natural guardian of I.C. and A.C., minors, are residents of New Jersey.

3. Plaintiff, Brenda Walsh Matias, is a resident of Pennsylvania.

4. Plaintiff, David Weidow, is a resident of Pennsylvania.

5. Plaintiffs, Julia Weidow, Nicholas Weidow, individually and as Parent and natural guardian of J.W., minor, are residents of Pennsylvania.

6. Plaintiffs, Theresa Weidow and Robert Weidow, are residents of Pennsylvania.

7. Plaintiff, Barbara Wilson, is a resident of Pennsylvania.

8. Plaintiff, Charles Perrella, is a resident of Pennsylvania.

9. Plaintiff, Natalie Weber, is a resident of New York.

10. Plaintiff, Anatoliy Vortman, is a resident of Connecticut.

11. Plaintiffs, Igor Sapozhnikov and Eleina Sapoz, are residents of Connecticut.

---

[1] This second amended complaint is filed pursuant to D.E. 25.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

12. Plaintiffs, Carole Barrowman and Robert Barrowman, are residents of New York.

13. Plaintiffs, Joanne Borek and Richard Borek, are residents of New York.

14. Plaintiff, John Mulligan, is a resident of Canada.

15. Plaintiff, John Mulligan, as Personal Representative of the Estate of Tammy Taylor.

16. Plaintiff, Eric Mulligan, is a resident of Canada.

17. Plaintiff, Elora Mulligan, is a resident of Canada.

18. Plaintiff, Blake Sheedy, is a resident of Canada.

19. Plaintiff, Stanislaw Niznikiewicz, is a resident of New York.

20. Plaintiffs, Brian Kouri, Sara Kouri, individually and as Parent and natural guardian of A.T., B.T., R.K., and L.K., minors, are residents of North Carolina.

21. Plaintiffs, Ellen Leffak and Ira Michael Leffak, are residents of Ohio.

22. Plaintiffs, Sarah Kashani, Michael Kashani, individually and as Parent and natural guardian of J.K., and M.K., minors, are residents of New York.

23. Plaintiffs, Laura Berger, Jonathan Berger, individually and as Parent and natural guardian of T.B., A.B., B.B., and R.B., minors are residents of Ohio.

24. Plaintiffs, Sally Jean Makely, individually and as Parent and natural guardian of G.M., K.M., K.M., O.M., and N.M., minors, are residents of New York.

25. Plaintiff, Kathryn Carney Falkman on behalf of minor C. F., is a resident of New York.

26. Plaintiff, Owen Makely, is a resident of New York.

27. Plaintiffs, Amal Nweiran Al Harayzeh, Imad Nweiran, individually and as Parent and natural guardian of N.N., minor, are residents of New Jersey.

28. Plaintiff, Sara Nweiran, is a resident of New Jersey.

29. Plaintiff, Dania Nweiran, is a resident of New Jersey.

30. Plaintiffs, Donna Hyman and Ira Hyman, are residents of New York.

31. Plaintiffs, Benito Juarez and Kristen Juarez, are residents of Pennsylvania.

32. Plaintiffs, Ladger Neustaeter, Andrea Neustaeter, individually and as Parent and natural guardian of R.N., and P.N., minors, are residents of Canada.

33. Plaintiffs, Kristina Johnstone, Brent Johnstone, individually and as Parent and natural guardian of E.J., and M.J., minors, are residents of Canada.

34. Plaintiffs, Stacy DiAddezio, Stephen DiAddezio, individually and as Parent and natural guardian of D.D., N.D., and S.D., minors are residents of Pennsylvania.

35. Plaintiffs, Barbara DeLiberali and John DeLiberali, are residents of Pennsylvania.

36. Plaintiffs, Jeanne Becvar and Glenn Becvar, are residents of New York.

37. Plaintiff, Heather Becvar, is a resident of New York.

38. Plaintiffs, Paul Franco and Patricia Franco, are residents of Connecticut.

39. Plaintiffs, Stephanie German, Brett Alperowitz, individually and as Parent and natural guardian of L.A., Z.A., R.A., minors, are residents of New York.

40. Plaintiffs, Dorothy Barenscott and Brian Barenscott, are residents of Canada.

41. Plaintiffs, Lori Boyer and Jeffery Boyer, are residents of Pennsylvania.

42. Plaintiff, Shane Boyer, is a resident of Pennsylvania.

43. Plaintiff, Janelle Peachy, is a resident of Pennsylvania.

44. Plaintiffs, Bonnie Walter and Stephen Walter, are residents of Pennsylvania.

45. Plaintiffs, Cheryl Moore and Michael Moore, are residents of New York.

46. Plaintiff, Chantale Martineau, is a resident of Canada.

47. Plaintiff, Philippe Dottini, is a resident of Canada.

48. Plaintiffs, Genevieve Dottini and Charles Routhier, are residents of Canada.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

49. Plaintiffs, Patrick Bober, Ana Bober, individually and as Parent and natural guardian of G.B., minor, are residents of Germany.

50. Plaintiffs, Lisette Coly and George E. Damalas, are residents of New York.

51. Plaintiff, Anatasia Damalas, is a resident of New York.

52. Plaintiff, George R. Damalas, is a resident of New York.

53. Plaintiff, Natalia Damato, is a resident of New York.

54. Plaintiffs, Miriam Quinn and Dennis Quinn, are residents of Pennsylvania.

55. Plaintiff, Kelly Merlino, is a resident of Pennsylvania.

56. Plaintiff, Isabella Merlino, is a resident of Pennsylvania.

57. Plaintiff, Gabriella Merlino, is a resident of Pennsylvania.

58. Plaintiffs, Ron Moore and Allison Moore, are residents of New York.

59. Plaintiff, Morgan J. Moore, is a resident of Oklahoma.

60. Plaintiff, Daisy Laureano, is a resident of New York.

61. Plaintiff, Dorota Niznikiewicz, individually and as Parent and natural guardian of M.N., minor, are residents of New York.

62. Plaintiffs, Marie Josee Fontaine, individually and as Parent and natural guardian of F.V., minor, are residents of Canada.

63. Plaintiff, Raphaelle Villeneuve, is a resident of Canada.

64. Plaintiffs, Nathalie Fontaine, Garett Gustafson, individually and as Parent and natural guardian of G.G., and M.G., minors, are residents of Canada.

65. Plaintiffs, Genevieve Fontaine, Michel Meunier, individually and as Parent and natural guardian of H.M., minor, are residents of Canada.

66. Plaintiffs, Claire Fontaine and Denis Fontaine, are residents of Canada.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

67. Plaintiffs, Laurie Forbes Levack and Kent Levack, are residents of Connecticut.

68. Plaintiffs, Faith Lorman, individually and as Parent and natural guardian of A.L., minor, are residents of Maryland.

69. Plaintiff, William Lorman, is a resident of Maryland.

70. Plaintiff, Olivia Lorman, is a resident of Maryland.

71. Plaintiffs, Lisa Marie Huntbach, William Huntbach, individually and as Parent and natural guardian of T.H., and K.H., minors, are residents of England.

72. Plaintiffs, James Anderson and Dorothy Anderson, are residents of New Jersey.

73. Plaintiffs, Domenic Casiero, Santina Casiero, individually and as Parent and natural guardian of C.C., and G.C., minors, are residents of Canada.

74. Plaintiff, Joan E. Kurtz, is a resident of New Jersey.

75. Plaintiffs, Joan M. Kurtz, individually and as Parent and natural guardian of R.J., minor, are residents of New Jersey.

76. Plaintiffs, Patricia Lipshultz, individually and as Parent and natural guardian of J.L., minor, are residents of New Jersey

77. Plaintiff, Eileen Lipshultz, is a resident of New Jersey.

78. Plaintiffs, Tamara King-Morrison, Jeremy Morrieson, individually and as Parent and natural guardian of J.M., A.M., S.M., minors, are residents of New Jersey.

79. Plaintiffs, Amy Barailloux and Frank Barailloux, are residents of Ohio.

80. Plaintiff, Christopher Busch, is a resident of Canada.

81. Plaintiff, Jessica Babylon, is a resident of Massachusetts.

82. Plaintiff, Megan Liliestedt, is a resident of Massachusetts.

83. Plaintiff, Joanna Bermingham, is a resident of Pennsylvania.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

84. Plaintiff, Daniel Sulvetta, is a resident of Pennsylvania.

85. Plaintiffs, Janet Isenman and Charles Isenman, are residents of New York.

86. Plaintiffs, Francis Godfrey and Janet Godfrey, are residents of New York.

87. Plaintiffs, Elisabeth Oistad, Tormod Syversen, individually and as Parent and natural guardian of E.S. and L.S., minors, are residents of Norway.

88. Plaintiffs, Donald Simone and Maureen Simone, are residents of Pennsylvania.

89. Plaintiff, Judith Farrell, is a resident of New York.

90. Plaintiffs, Geremiah Wheeler and Sarah Wheeler, individually and as Parents and natural guardians of M.W., G. W., C.W. and R.W., minors, are residents of Connecticut.

91. Plaintiff, Gail Sanchez, is a resident of Connecticut

92. Plaintiff, Ann Pardi, is a resident of New York.

93. Plaintiff, James Raffa, is a resident of New York.

94. Plaintiffs, Russ Semeran, Olga Semeran and Paul Semeran, are residents of New Jersey.

95. Plaintiff, Dawn Pannell, individually and as Parent and natural guardian of N.P., minor, is a resident of Illinois.

96. Plaintiff, Tara Patricia Hambly, individually and as Parent and natural guardian of R.V., minor, is a resident of Canada.

97. Plaintiff, Penny Patricia Hambly, is a resident of Canada.

98. Plaintiff, Karen McIntyre, is a resident of New York.

99. Plaintiff, Mary E. Schuster, is a resident of New York.

100. Plaintiff, Katherine DeMaio, is a resident of New York.

101. Plaintiffs, Edgardo Herrero and Maria Herrero, individually and as Parent and natural guardian of E1. H. and E2. H., minors, are residents of New York.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

102.   Plaintiffs, Thomas Stepanski and Judith Stepanski, are residents of Pennsylvania.

103.   Plaintiffs, Kenneth William Goble, Suzanne Goble, Jessica Goble, and Alex Goble, are residents of Pennsylvania.

104.   Plaintiffs, Christopher Betro, Stacy Curcio, individually and as Parent and natural guardian of A.C. and G.C., minors, are residents of New York.

105.   Plaintiffs, Richard Scott and Denise Scott, are residents of New York.

106.   Plaintiffs, Timothy Reynolds and Amy Lau, individually and as Parent and natural guardian of C.L and K.L, minors, are residents of Canada.

107.   Plaintiff, Carlos Fernando Cruz Sanchez, is a resident of Mexico

108.   Plaintiff, Silvia Patricia Sanchez Baker, is a resident of Mexico.

109.   Plaintiff, Fernando Cruz Contreras, is residents of Mexico.

110.   Plaintiff, Tanya Maria Cruz Sanchez, is a resident of Mexico.

111.   Plaintiff, Jaime Mauricio Sanchez Morales, is a resident of Mexico.

112.   Plaintiffs, Lisa Walchusky and George Walchusky, individually and as Parent and natural guardian of H.W, are residents of New York.

113.   Plaintiff, Sarah Schmidt, individually and as Parent and natural guardian of A.C. and S.C., minors, is a resident of Canada.

114.   Plaintiff, Ella Morro, is a resident of New York.

115.   Plaintiffs, Michel Korman and Suzi Korman, individually and as Parent and natural guardian of A.K. and J.K., minors, are residents of Canada.

116.   Plaintiffs, Aaron Bernau and Heather Bernau, individually and as Parent and natural guardian of A1. B. and A2. B., minors, are residents of Florida.

117.   Plaintiff, Melanie Korman, is a resident of Canada.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

118.  Plaintiff, Jeremey Korman, is a resident of Canada.

119.  Plaintiff, Jeremy Cohen, is a resident of Canada.

120.  Plaintiff, Malgorzata Bonneville, individually and as Parent and natural guardian of N.B and
      D.B., minors, is a resident of Canada.

121.  Plaintiff, Kaitlyn Bonneville, is a resident of Canada.

122.  Plaintiff, Laurie Rail, is a resident of Canada.

123.  Plaintiff, Kailey Sauve, is a resident of Canada.

124.  Plaintiff, John Doe, is a resident of Canada.

125.  Plaintiff, Morris Wilson, is a resident of New York.

126.  Plaintiff, Stephanie Staley, is a resident of New York.

127.  Defendant, NCL (BAHAMAS) LTD (hereinafter referred to as "NCL"), is a foreign entity
      with its principal place of business in Miami, Florida.

128.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28
      U.S.C. § 1332.  In the event diversity jurisdiction does not apply to any or all of the Plaintiffs,
      then this matter is brought under the admiralty and maritime jurisdiction of the Court.

129.   Defendant, NCL, at all times material, personally or through an agent;

      a.  Operated, conducted, engaged in or carried on a business venture in this state and/or
          county or had an office or agency in this state and/or county;

      b.  Was engaged in substantial activity within this state;

      c.  Operated vessels in the waters of this state;

      d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

      e.  The acts of Defendant set out in this Complaint occurred in whole or in part in this county
          and/or state.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

f.  The Defendant was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard the vessel, *Norwegian Breakaway*.

130.  Defendant is subject to the jurisdiction of the Courts of this state.

131.  The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

132.  At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, *Norwegian Breakaway*.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

133.  This lawsuit involves Defendant NCL's knowing and intentional decision to sail the *Norwegian Breakaway*, **carrying more than 4,000 paying passengers, directly into the path of a massive weather event (Bomb Cyclone)**.  More than 4,000 passengers were subjected to hours of terror as the gigantic cruise ship was battered by hurricane force winds and more than 30 foot waves.

134.  Prior to disembarking Great Stirrup Cay on Tuesday January 2, 2018, there were numerous forecasts which predicted the storm which the *Norwegian Breakaway* encountered. At approximately 6 p.m. on Saturday December 31, 2017, the National Oceanic and Atmospheric Administration's (NOAA) Ocean Prediction Center first headlined the possibility of hurricane force winds for Thursday, January 4, 2017, along the eastern coast near Northern Florida:

> "Our 96-hr forecast chart (valid 12z January 4) highlights very dangerous Atlantic marine conditions expected later this week. Rapidly intensifying low pressure is forecast to develop hurricane force winds on Thursday as it lifts northward along the outer portion of our offshore zones.
> Atlantic          marine          interests          should          closely          monitor
> http://ocean.weather.gov/Atl_tab.shtml in the coming days for the latest updates on this developing storm."

135.  On January 1, 2018, the Weather Prediction Center's Winter Weather Forecast Discussion

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

predicted a strong northward-tracking area of low pressure would bring wintry precipitation to much of the East Coast of the United States:

> "Another round of wintry precipitation is possible wed/wed night as well-defined shortwave moves across the southeast…with precipitation spreading west of an area of low pressure developing and tracking north from the northern Bahamas on wed."

136.     On January 2, 2018, weather forecasters from the U.S. government and private sector were unanimous in predicting a storm of historic proportions would form off the Southeast coast, near Florida, and spin up the East Coast toward Nova Scotia by January 5, 2018. NOAA indicated that winds would increase to 80 knots and seas up to 33 feet by January 4, 2018.

137.     On January 2, 2018, at approximately 5:30 a.m., NOAA issued a warning of **hurricane force winds** for Wednesday night January 3, 2018, and Thursday January 4, 2018.

138.     The *Norwegian Breakaway* left Great Stirrup Cay, Bahamas for New York at approximately 6 p.m. on Tuesday January 2, 2018, thirteen (13) hours after NOAA's warning of hurricane force winds expected in the vessel's intended and actual path.

139.     NCL knew or should have known of these hurricane force wind warnings, but nonetheless, the *Norwegian Breakaway* left Great Stirrup Cay, Bahamas, on January 2, 2018, intending to sail back to New York, carrying more than 4,000 paying passengers.

140.     After the vessel left Great Stirrup Cay, the passengers were not informed of the severity of the weather system the cruise was intending on sailing into. In fact, it wasn't until the next day when large waves were rocking the cruise ship, causing passengers and crewmembers to become seasick, did the vessel warn the passengers.  However, the only warning the passengers received was "**Ladies and gentlemen, we are in rough seas and we are optimizing our speed and course to minimize the movement of the ship**." (*emphasis added*) Passengers had no idea they were being subjected to a historic winter weather event with hurricane force winds.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

141.    As predicted, by late evening on Wednesday, January 3, 2018, the hurricane-force winds and rough seas were battering the vessel so severely that passengers were unable to stand in their staterooms and were being thrown out of their beds; causing various injuries to passengers, including Plaintiffs.

142.    While confined to their staterooms and small public spaces in the interior, passengers were holding onto whatever they could find in order to keep from falling due to the weather event. Furniture was overturned and tossed throughout the vessel; broken glass littered all levels of the vessel; elevators became inoperable; unsanitary water overflowed out of shower drains and into passengers' cabin; waves crashed through open and/or shattered balcony doors; water rushed in through numerous other areas of the vessel; and pipes consisting of raw water burst on the vessel, causing flooding throughout multiple decks of the vessel.

143.    At times the vessel listed (tilted) as far as 45 degrees and passengers were injured. Waves up to 30 feet were crashing along the side of the *Norwegian Breakaway* as the ship listed to either side.

144.    Passengers scrambled to search for life jackets or floatation devices, but were unable to do so. There were numerous families with small children aboard the vessel and parents did their best to protect themselves and their young children who were crying uncontrollably and screaming in sheer terror.

145.    Hundreds of passengers, including Plaintiffs, were subjected to hours of terror, flooding of raw water, unsanitary conditions, lack of ventilation of fumes, and trauma as a result of the cruise traveling through hurricane force winds – all of which could have been easily avoided if NCL stayed in Great Stirrup Cay until the severe winter storm passed or rerouted the ship so that the passengers were not exposed to the dangerous weather conditions. As a result of NCL's negligence, passengers sustained physical and emotional injuries.

146.    NCL was fully aware of the high probability of injury or death to the passengers on the

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

*Breakaway* in sailing through the winter storm—consisting of hurricane force winds and over 30 foot waves—acting willfully, wantonly, and outrageously by choosing to sail through such a storm, resulting in injuries and damages to the passengers, including Plaintiffs. The combination of the projected wave heights and hurricane force winds put the lifeboats and rescue boats at a high risk of becoming inoperable, which would have left thousands of passengers and crewmembers at risk to the perils of the sea, during the Bomb Cyclone, in the event of an emergency. The lifeboats and/or rescue boats were indeed not reasonably safe and/or inoperable after sailing through the Bomb Cyclone.

147.    Each and all of the foregoing conditions, including but not limited to, the impending dangerous weather and sea conditions, were known and/or should have been known to NCL prior to the time NCL decided to leave Great Stirrup Cay on January 2, 2018.  As such, NCL knowingly, willfully, wantonly, and outrageously chose to sail directly into the path of a hurricane force storm, thereby placing the lives at risk of each and every one of the passengers and crew aboard that ship. Because Plaintiffs' injuries resulted from NCL's wanton, willful, and outrageous conduct, Plaintiffs are entitled to seek punitive damages. *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).

## COUNT I – NEGLIGENCE

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 147 as though alleged originally herein and further allege:

148.    It was the duty of Defendant NCL to provide Plaintiffs with reasonable care under the circumstances.

149.    On or about January 2, 2018 and continuing until January 3, 2018, NCL and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the

L I P C O N ,  M A R G U L I E S ,  A L S I N A  &  W I N K L E M A N ,  P . A .
W W W . L I P C O N . C O M

circumstances.

150.   The severe weather conditions affected what NCL was required to do to not breach its duty to provide reasonable care.

151.   Plaintiffs were injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

    a.  Failure to use reasonable care to provide and maintain a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or

    b.  Knowingly sailing the subject vessel into severe weather conditions; and/or

    c.  Failing to have proper policies and procedures in place to determine whether to sail into dangerous weather conditions; and/or

    d.  Deciding to sail the vessel despite severe weather warnings; and/or

    e.  Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

    f.  Sailing the vessel into hurricane-force winds; and/or

    g.  Sailing the vessel into 30 foot seas; and/or

    h.  Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the storm; and/or

    i.  Failing to warn passengers of the dangers of leaving Great Stirrup Cay, Bahamas on the *Norwegian Breakaway* in light of the expected weather and sea conditions; and/or

    j.  Failure to maintain the vessel free of unsanitary water and/or flooding; and/or

    k.  Failure to warn of unsanitary water flooding throughout multiple decks of the

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

vessel; and/or

l.   Failing to take a safe route from Great Stirrup Cay, Bahamas, to New York, New York; and/or

m.   Failing to alter the route to a safer route while at sea; and/or

n.   Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

o.   Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into an expected storm; and/or

p.   Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or seek safe harbor when an expected storm became likely; and/or

q.   Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

r.   Exposing its passengers to hurricane force weather conditions; and/or

s.   Failure to provide adequate training, instruction, and supervision to the captain and crew; and/or

t.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

u.   Failure to adequately maintain the *Norwegian Breakaway*, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

v.   Failure to warn of inadequate maintenance aboard the vessel as it was sailing

through the storm; and/or

w.   Failure to adequately inspect the *Norwegian Breakaway*, its engines, machinery, and sanitary systems so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

x.   Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y.   Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

z.   Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

aa.  Knowingly, willfully, wantonly, and outrageously deciding to sail the subject vessel into severe weather conditions while knowing the high probability of injury and/or death to passengers; and/or

bb.  Knowing, as a result of previous similar incidents, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

cc.  Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

dd.  Failure to employ an in-house meteorological staff tasked with monitoring

storms and/or sea conditions to ensure the safety of passengers.

152.    At all material times, Defendant NCL had exclusive custody and control of the vessel, *Norwegian Breakaway*.

153.    Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

154.    As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages,[2] and demands trial by jury.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 148 as though alleged originally herein and further allege:

155.    At all times material, due to the negligence and/or gross negligence and/or intentional

---

[2] "A plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." *Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).*

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Plaintiffs' risk of physical harm included but is not limited to: injury and/or death and/or severe emotional and/or psychological trauma.

156.     Defendant's negligence and/or gross negligence and/or intentional and/or willful, wanton, and outrageous conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

157.     During the time period alleged in the complaint, Plaintiffs were confined to the interior of the vessel for approximately 24 hours and were subjected to the violent storm causing a reasonable fear of death and the sinking of the vessel.

158.     Plaintiffs aboard the *Norwegian Breakaway* were placed in the zone of danger as a result of the violent storm. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

159.     Plaintiffs' fear of death and experience of mental, emotional and/or physical harm were genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of NCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

160.     As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic

insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**Dated: May 28, 2019**

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiffs*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:  */s/ Michael A. Winkleman*
**MICHAEL A. WINKLEMAN**
Florida Bar No. 36719
mwinkleman@lipcon.com
**JASON R. MARGULIES**
Florida Bar No. 57916
jmargulies@lipcon.com
**MARC E. WEINER**
Florida Bar No. 91699
mweiner@lipcon.com
**DANIEL W. GRAMMES**
Florida Bar No. 1010507
dgrammes@lipcon.com
*Counsel for Plaintiffs ¶ 1-89*

AND

HOLZBERG LEGAL
Offices at Pinecrest II, Suite 220

7685 S.W. 104th Street
Miami, Florida 33156
Telephone: (305) 668-6410
Facsimile: (305) 667-6161

By: */s/ Glenn J. Holzberg*
**GLENN J. HOLZBERG**
Florida Bar No.: 369551
Glenn@holzberglegal.com
*Counsel for Plaintiffs ¶ 90-124*

AND

HALPERN SANTOS & PINKERT, P.A.
150 Alhambra Circle - Suite 1100
Coral Gables, FL 33134
Phone: (305) 445-1111
Fax: (305) 445-1169

By: */s/ Ernesto L. Santos, Jr.*
**ERNESTO L. SANTOS, JR.**
Florida Bar No.: 17023
Ernesto@hsptrial.com
*Counsel for Plaintiffs ¶ 125-126*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 28, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Michael A. Winkleman*
**MICHAEL A. WINKLEMAN**

## SERVICE LIST

### _Attorneys for Plaintiffs_:

**MICHAEL A. WINKLEMAN**
Florida Bar No.:  36719
mwinkleman@lipcon.com
**JASON R. MARGULIES**
Florida Bar No.:  57916
jmargulies@lipcon.com
**MARC E. WEINER**
Florida Bar No.:  91699
mweiner@lipcon.com
**DANIEL W. GRAMMES**
Florida Bar No. 1010507
dgrammes@lipcon.com
LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305)  373-3016
Facsimile:   (305) 373-6204


**GLENN J. HOLZBERG**
Florida Bar No.: 369551
Glenn@holzberglegal.com
HOLZBERG LEGAL
Offices at Pinecrest II, Suite 220
7685 S.W. 104th Street
Miami, Florida 33156
Telephone: (305) 668-6410
Facsimile: (305) 667-6161

**ERNESTO L. SANTOS, JR.**
Florida Bar No.: 17023
Ernesto@hsptrial.com
HALPERN SANTOS & PINKERT, P.A.
150 Alhambra Circle - Suite 1100
Coral Gables, FL 33134
Phone: (305) 445-1111
Fax: (305) 445-1169

***Attorneys for Defendant NCL:***

**CURTIS MASE**
Florida Bar No.: 73928
cmase@maselaw.com
**WILLIAM SEITZ**
Florida Bar No.: 73928
wseitz@maselaw.com
MASE MEBANE & BRIGGS, P.A.
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:   (305) 377-0080
*Attorneys for Defendant*

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M